(913 P.2d 1236)
No. 72,185

STATE OF KANSAS, *Appellee*, v. LARRY DEAN PARKER, *Appellant*.

Opinion filed April 5, 1996.

*Debra J. Wilson*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Joe E. Lee*, assistant county attorney, *Rodney H. Symmonds*, county attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before BRAZIL, C.J., LEWIS and ROYSE, JJ.

LEWIS, J.: Defendant Larry Dean Parker was convicted of one count of aggravated robbery and sentenced to a term of 9 to 23 years in prison. This is a direct appeal from the conviction and sentence.

The scenario begins in Hot Rods, a tavern in Emporia. Defendant and his brother Glenn had gone to the tavern to drink beer and play pool. In the course of the evening, they met and began drinking with Bruce Niederhauser. The three left Hot Rods sometime during the evening and went to Hooters. At Hooters, they continued to drink beer, and there is an indication that Niederhauser became totally intoxicated and incapacitated. At some point during the evening, all three left Hooters and got into Glenn's pickup.

Sometime between leaving Hooters and 8 o'clock the next morning, Niederhauser was brutally beaten, stripped of his clothing, and left in a ditch. A Lyon County citizen spotted Niederhauser in the ditch and called the sheriff's office. When the sheriff's deputy

arrived, Niederhauser was found naked, lying in the ditch, covered with blood and abrasions.

Niederhauser could not remember any details of the beating, but related that he could recall he was with defendant and his brother. A police investigation uncovered incriminating evidence, and defendant and his brother were both charged with the beating and robbery of Niederhauser.

Glenn made a deal with the authorities and, in exchange for his testimony against his brother, was allowed to plead to conspiracy to commit aggravated robbery and was sentenced to community corrections. According to Glenn, it was defendant who beat and stripped Niederhauser and left him in the roadway.

As might be imagined, defendant related a different story of the events than did his brother. Defendant testified at trial that it was Glenn who beat Niederhauser. Defendant insists he attempted to stop his brother and that he did not hit or kick Niederhauser. He did admit that at one point he pretended to kick Niederhauser so that Glenn would not call him a "chicken." Defendant insisted, however, that he only pretended to do so and that he did not actually participate in the beating of Niederhauser.

The jury convicted defendant of aggravated robbery. Defendant raises several issues on appeal.

## AIDING AND ABETTING

The trial court gave the jury an instruction on aiding and abetting over the objection of defendant. Defendant argues that the trial court erred in so instructing the jury and that there was not sufficient evidence to convict him on an aiding and abetting theory.

Defendant's basic argument is that under the evidence, he could only have been convicted as a principal or acquitted as an innocent passive observer. We do not agree.

There is no crime of aiding and abetting in this state. An individual is guilty of a crime either because he or she is the principal actor in the event or because he or she aided and abetted in the commission of a crime. In either event, a defendant is simply adjudged to be guilty of a crime charged, and the jury verdict does not specify whether guilt is as a principal or an aider and abettor.

"To be guilty of aiding and abetting in the commission of a crime the defendant must wilfully and knowingly associate himself with the unlawful venture and wilfully participate in it as he would in something he wishes to bring about or to make succeed." *State v. Schriner*, 215 Kan. 86, Syl. ¶ 6, 523 P.2d 703 (1974). See *State v. Green*, 237 Kan. 146, Syl. ¶ 4, 697 P.2d 1305 (1985).

There is ample evidence in the record to convict defendant as the principal actor in the aggravated robbery of Niederhauser. The testimony of defendant's brother, Glenn, along with certain other demonstrative evidence, is more than sufficient to sustain a verdict of guilty. Defendant and his brother offered totally different versions of what happened. Glenn testified that defendant did it, and defendant testified that Glenn did it. The jury apparently believed Glenn, which was its prerogative.

There was also sufficient evidence to justify the giving of the aiding and abetting instruction.

For instance, defendant testified that while at Hooters, he learned that Glenn was planning to beat Niederhauser. Niederhauser was so drunk at Hooters that he had to be helped to leave the premises, and defendant aided him and placed him in Glenn's vehicle. Even though defendant now testifies that he thought Glenn had decided not to beat Niederhauser, his assistance in getting Niederhauser to the pickup may very well be considered as aiding and abetting in the commission of the crime. In addition, defendant admits that he pretended to kick Niederhauser. Although he testified that he did not actually do so, he apparently convinced Glenn that he was helping in the beating. This could only have encouraged Glenn to continue his attack on Niederhauser if one chooses to accept defendant's version of the events. In addition to these specific incidents, there is adequate evidence in the record to support an inference that if defendant was not the principal actor in the crime, he certainly aided and abetted in its commission.

After reviewing the record on the issue at hand, we hold there was sufficient evidence that defendant aided and abetted in the commission of the crime of aggravated robbery. The trial court did not err in instructing the jury on this issue.

## VOLUNTARY INTOXICATION

Defendant next argues that the trial court erred in refusing to give his requested instruction on voluntary intoxication.

In *State v. Montano*, 18 Kan. App. 2d 502, Syl. ¶ 7, 855 P.2d 979, *rev. denied* 253 Kan. 862 (1993), we outlined what must be shown in order to require an instruction on voluntary intoxication:

> "To require the giving of an instruction on voluntary intoxication, there must be some evidence upon which a jury might find that defendant was so intoxicated that his mental faculties were impaired to the extent that he was incapable of forming the necessary specific intent required to commit the crime. Statements of an accused can negate testimony about consumption of alcohol and, thus, justify a court's refusal to instruct on voluntary intoxication."

The evidence in this case did not require that the trial court give the requested instruction. The testimony of defendant at trial indicates he was able to detail all of the events preceding the beating of Niederhauser and to explain precisely what he did do and did not do during that beating. His testimony also indicates he was able to control himself to the extent of not harming Niederhauser and imploring Glenn to stop his attack on Niederhauser. The ability to recall events leading up to the commission of a crime is evidence that a defendant's mental faculties were not sufficiently impaired by intoxication. *State v. Gonzales*, 253 Kan. 22, 853 P.2d 644 (1993); *State v. Minski*, 252 Kan. 806, 812, 850 P.2d 809 (1993); *State v. Payton*, 229 Kan. 106, 114, 622 P.2d 651 (1981).

"The burden of showing that intoxication has robbed defendant's mental faculties is on defendant." *State v. Minski*, 252 Kan. 806, Syl. ¶ 3. Defendant's testimony in this case clearly indicates his mental faculties had not been robbed by his intoxication. The record shows that defendant was clearly not " 'utterly devoid of consciousness or awareness.' " See *State v. Warren*, 252 Kan. 169, 174, 843 P.2d 224 (1992). Defendant's testimony in this case indicates he could reason, plan, recall, exercise his motor skills, and pretend to kick at the victim to fool his brother. The evidence indicates the trial court did not err in refusing to give an instruction on voluntary intoxication.

## SENTENCE OF CODEFENDANT

As indicated, defendant's brother, Glenn, was convicted of conspiracy to commit aggravated robbery, a class E felony, and was sentenced to community corrections. Defendant, on the other hand, was convicted of aggravated robbery, a class B felony, and was sentenced to a term of 9 to 23 years. Defendant argues the trial court erred in giving him a sentence much harsher than that received by his codefendant. He also argues the trial court erred in not stating the reasons for giving him a harsher sentence than was imposed on his brother. In *State v. Bailey*, 251 Kan. 527, 531, 834 P.2d 1353 (1992), two codefendants were convicted of identical crimes. One defendant received three consecutive sentences while the other received only two. As a result, one defendant's parole eligibility date was 15 years later than the other. The defendant receiving the harsher sentence appealed, making an argument similar to the one made by defendant here. The Supreme Court vacated the harsher sentence and remanded for reconsideration because the trial court had failed to give its reasons for the disparate sentences:

"In sentencing a convicted felon, a second trial judge is not restricted to imposing a sentence no greater than the sentence another judge previously imposed upon a codefendant *for the same crime*. The second judge, however, must consider the sentence given to the codefendant and, if a longer sentence is given, the reason for doing so should be set forth on the record." (Emphasis added.) *State v. Bailey* 251 Kan. 527, Syl. ¶ 2.

On appeal, defendant relies on *Bailey*. We conclude that this reliance is misplaced. In *Bailey*, the two defendants were convicted of the same crime. In this case, defendant was convicted of a class B felony while his brother was convicted of a class E felony. A similar factual situation was before the Supreme Court in *State v. Castoreno*, 255 Kan. 401, 874 P.2d 1173 (1994). In that case, the defendant had been convicted of aggravated criminal sodomy and one count of rape, both class B felonies. The codefendant had entered into a plea agreement and pled guilty to one count of aggravated sexual battery and one count of attempted aggravated criminal sodomy, class D and class C felonies, respectively. Cas-

toreno argued that the trial court erred in giving him a more severe sentence than his codefendant without stating the reasons for that sentence. Castoreno, in his appeal, relied on *Bailey*. The Supreme Court distinguished *Bailey*, saying:

"*Bailey* is not controlling in the present case because Teetzel and Castoreno were not sentenced for the same offenses. Their different convictions were a result of Teetzel's entering into a plea agreement. Neither party cites any authority which offers guidance where, due to one defendant's entering pleas and one defendant's going to trial, codefendants were convicted of very different offenses for very similar conduct and culpability." 255 Kan. at 413.

In *State v. Davis*, 256 Kan. 1, 34, 883 P.2d 735 (1994), the Supreme Court in a factual situation similar to the one at bar, said: "Davis clearly received a much harsher sentence than his codefendants. The disparity between Davis' and Roddy's sentences really cannot be compared because the defendants were convicted of different crimes."

We adopt the reasoning set forth by our Supreme Court in *Bailey* and *Davis*. In the instant matter, the defendant and his brother were convicted of different crimes, and there is no rational means of comparing their sentences. It follows that we do not consider that the trial court was required to give reasons for pronouncing different sentences for the different crimes.

Defendant argues that Glenn is "more culpable" than he. Glenn is only more culpable if we accept defendant's version of the events. If we accept Glenn's version, we reach an entirely different conclusion. We cannot tell and do not intend to judge the credibility of these witnesses. We do not know who is more culpable. For our purposes, the record shows that the two defendants were convicted of entirely different crimes. Under those circumstances, the trial court was not required to give any reasons for imposing a greater sentence on defendant than it did on defendant's brother.

Defendant's sentence is within the statutory guidelines. The record indicates the trial court considered the required sentencing factors. There is no argument that the sentence was a result of partiality, prejudice, oppression, or corrupt motive. We affirm the sentence imposed.

Affirmed.