(78 P.3d 474)

No. 89,480

STATE OF KANSAS, *Appellee*, v. SHERYL DENISE DAVIS, *Appellant*.

Opinion filed October 17, 2003.

*Sandra Carr*, assistant appellate defender, for appellant.

*Steven J. Obermeier*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before PIERRON, P.J., MALONE and GREENE, JJ.

MALONE, J.: Sheryl Denise Davis appeals her conviction of one count of felony theft. She claims that the trial court erred in denying her motion to suppress evidence and that there was insufficient evidence to support her conviction. Finding no reversible error, we affirm.

On February 18, 2001, Davis and Wilbert Handson were seen standing in front of Linens 'N Things at the Great Mall of the Great Plains in Olathe, Kansas. Davis and Handson were pushing a blue shopping cart when they stopped in front of the store. Handson entered the store pushing the shopping cart. Dale Bridger, a shopper who witnessed the events, testified that Davis "stood there looking around, kind of—I wouldn't say it was nervous, but just up and down, which was unusual." Bridger testified that it looked unusual because it appeared that Davis was "standing lookout."

Handson walked into the store pushing the empty shopping cart and came out a minute later with boxes in the cart. Handson was not near the cash registers when he entered or exited the store. Handson met Davis outside the store, and they walked away at a hurried pace. Bridger, who had witnessed what he thought was a theft, attempted to get customer service to call mall security.

Joan Schindler, an employee of Linens 'N Things, also noticed Davis and Handson with the shopping cart. Schindler, who was on her break at the time, noticed that the cart contained two boxes of

Calphalon cookware. She felt that this was unusual since she had never seen anyone buy two identical cookware sets.

Schindler, who was wearing a Linens 'N Things employee uniform, testified that she watched Davis and Handson walk towards the mall exit. As Davis and Handson approached Schindler, Davis took a shopping bag and placed it over the top of the cookware. Schindler testified that "it was almost as if she tried to cover it up so that I couldn't see into the cart."

Schindler and Bridger followed Davis and Handson outside the mall to attempt to get a license plate number. Schindler and Bridger saw Davis and Handson walk to a car, but instead of leaving, Davis and Handson put the merchandise into the trunk and returned to the mall. Davis and Handson went into a KB Toys store and made a purchase. They appeared to Schindler to be "nervous" and "fidgety."

Schindler and her manager approached Davis and Handson, and the manager asked them to produce a receipt for the cookware. Schindler testified that Davis and Handson "became animated, they were sweating, they were nervous." At this time, the Olathe police arrived and asked Schindler to identify which car Davis and Handson had approached in the parking lot. Schindler could not identify the exact car but told them it was "at the very end of the parking row."

Officer Joseph Wilson placed Davis and Handson under arrest and removed a set of Dodge car keys from Handson. Davis and Handson were transported to the police station. Based on Schindler's description of where the car was located, the Dodge car keys, and the fact that Davis and Handson had mentioned that they were from Missouri, Wilson began to look for the car. Wilson found a 1992 Dodge Dynasty with Missouri temporary tags and opened the car with the keys. Wilson discovered the two cookware boxes in the trunk of the car. Schindler identified the two boxes as being Linens 'N Things' merchandise.

Davis was charged with felony theft. She filed a motion to suppress evidence seized from the car. The trial court overruled the motion on the ground that Davis lacked standing to object to the car search. Following a jury trial, Davis was convicted of felony

theft and sentenced to 9 months in prison. This timely appeal follows.

Davis first claims that the trial court erred in denying her motion to suppress evidence seized from the car.

"When reviewing a motion to suppress evidence, an appellate court reviews the factual underpinnings of a district court's decision " 'by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. An appellate court does not reweigh the evidence. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review.' " [Citation omitted.]" *State v. Alvidrez*, 271 Kan. 143, 145, 20 P.3d 1264 (2001).

Initially, the State argues this issue is not properly preserved for appeal because there was no contemporaneous objection to the evidence at trial. K.S.A. 60-404 provides:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

This statute requires a party to make a contemporaneous objection to the admission of the evidence, even if that party objected to the evidence at a pretrial hearing and the trial court overruled the objection. *Douglas v. Lombardino*, 236 Kan. 471, 482, 693 P.2d 1138 (1985).

However, the State is incorrect in asserting Davis failed to make a contemporaneous objection to the admission of the evidence at trial. The evidence subject to the motion to suppress was introduced at trial through the testimony of Officer Wilson. Prior to Wilson taking the stand, counsel approached the bench and the defense attorney specifically renewed his motion to suppress evidence. The trial court responded, "So acknowledged and overruled." We find this constitutes a timely and specific objection sufficient to satisfy the spirit of K.S.A. 60-404. Accordingly, we will address the merits of Davis' claim.

## STANDING

The trial court overruled the motion to suppress evidence solely on the ground that Davis lacked standing to challenge the search

of the car. The trial court considered the testimony of Davis, who was the only witness who testified on the issue of standing. Davis testified that she owned the 1992 Dodge Dynasty and that she had purchased the car in 2000. She testified her name was on the certificate of title, but she did not bring the certificate with her to the hearing. Davis indicated the car was not properly registered and she only had temporary tags. Davis testified that on February 18, 2001, she loaned the keys to Handson so he could do the driving that day. The State offered to call a witness to testify on the issue of standing, but the trial court proceeded to rule on the motion.

The trial court made no specific findings but merely stated, "Motion is denied, lack of standing by the defendant." Apparently, the trial court determined that Davis lacked standing because she failed to conclusively prove she owned the car, it was not properly registered, and she had loaned her keys to Handson that day.

The general rule in Kansas is that an individual must have his or her own personal expectation of privacy in the area searched in order to have standing to challenge that search. *State v. Worrell*, 233 Kan. 968, 970, 666 P.2d 703 (1983). Specifically, a person has no standing to challenge the search of an automobile unless the person is the owner of the automobile or is in possession of the automobile. *State v. Epperson*, 237 Kan. 707, 716, 703 P.2d 761 (1985); *State v. Roberts*, 210 Kan. 786, Syl. ¶ 1, 504 P.2d 242 (1972); *State v. Edwards*, 197 Kan. 146, Syl., 415 P.2d 231 (1966).

In this case, Davis provided uncontroverted evidence that she owned the car, but had simply failed to have it registered. This testimony alone is sufficient to establish standing to challenge the search of the car. Moreover, Davis testified that she only loaned the keys to Handson on that particular day. One who loans a vehicle to another party retains standing to object to a police search of the vehicle unless the evidence shows that the owner abandoned any reasonable expectation of his or her privacy interests in the vehicle. *State v. Bartlett*, 27 Kan. App. 2d 143, 147-50, 999 P.2d 274 (2000).

On appeal, the State argues that Davis had to prove ownership of the car and failed to bring forth any evidence that she was the car's owner. However, the State bears the burden of proving the lawfulness of a search and seizure at a hearing on a motion to

suppress evidence. K.S.A. 22-3216(2). This particular motion was denied solely due to Davis' perceived lack of standing. Once Davis asserted ownership of the car, the State should have been required to present evidence that Davis was not the owner or that she had relinquished possession of the car. No such evidence was presented at the hearing. Based upon the uncontroverted evidence in Davis' favor, we find that the trial court erred in denying the motion to suppress evidence based solely on lack of standing.

However, our determination that the trial court erred in ruling that Davis lacked standing does not preclude our analysis of whether the police had a legal basis to search the car. The evidence surrounding the car search and the facts leading up to the search are completely uncontroverted. Whether the police officer had a legal basis to search the car in this case is solely a question of law. Thus, we can review the merits of Davis' objection to the car search.

Davis argues that the police officers lacked authority to search the car incident to a lawful arrest of the occupants. On this point we agree. The scope of a search incident to a lawful arrest is limited to the person arrested and the area within such person's immediate presence. K.S.A. 22-2501. Here, by the time Wilson searched the car, Davis and Handson were being transported to the police station in another vehicle. Clearly the search of the 1992 Dodge Dynasty cannot be justified as a search incident to a lawful arrest of the occupants.

## AUTOMOBILE EXCEPTION

However, the State is not claiming that the search was justified incident to a lawful arrest of the occupants. Instead, the State argues that the search of the car was justified under the "automobile exception" to the rules of search and seizure. Under the automobile exception, an automobile search may be upheld as long as there is probable cause to believe there is evidence of a crime in the automobile. *Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970). The automobile exception was originally based on the mobility of a vehicle. Under this exception, exigent circumstances are not required to search a vehicle. Essentially, the

vehicle itself provides the exigent circumstances. The automobile exception may also be justified because the expectation of privacy with respect to one's automobile is significantly less than the privacy expectation relating to one's home. *California v. Carney*, 471 U.S. 386, 391, 85 L. Ed. 2d 406, 105 S. Ct. 2066 (1985).

The automobile exception is recognized and adopted in Kansas. In *State v. Hays*, 221 Kan. 126, 130, 557 P.2d 1275 (1976), the Kansas Supreme Court noted that "automobiles can be searched without a warrant under circumstances which would not justify the search without a warrant of a house or office, provided there is probable cause to believe that the automobile contains articles which the officers are entitled to seize." Specifically, the Kansas Supreme Court has held that "[a]utomobile searches may be upheld if there is probable cause to believe there is evidence of crime in the automobile." *State ex rel. Love v. One 1967 Chevrolet*, 247 Kan. 469, 477, 799 P.2d 1043 (1990); *State v. MacDonald*, 253 Kan. 320, 325, 856 P.2d 116 (1993); see *State v. Garcia & Bell*, 210 Kan. 806, 810, 504 P.2d 172 (1972).

Thus, all that is required to search a vehicle under the automobile exception is probable cause to believe there is evidence of a crime in the vehicle. "Probable cause to search a vehicle is established if, under the 'totality of the circumstances' there is a 'fair probability' that the car contains contraband or evidence." *United States v. Nielsen*, 9 F.3d 1487, 1489-90 (10th Cir. 1993).

In this case, Wilson knew approximately where the car was parked based on eyewitness accounts. The eyewitnesses had observed Davis and Handson place the merchandise from the store into the trunk of the car. This was after the eyewitnesses had observed Davis and Handson remove the merchandise from the mall in a very suspicious manner. Wilson had a set of Dodge car keys, and he also knew that Davis and Handson had claimed they were from Missouri. He located the correct car and discovered the stolen merchandise in the trunk. Wilson was not required to randomly search numerous vehicles until he found the one in question. Under the "totality of the circumstances" Wilson had probable cause to believe that Davis' car had evidence relating to the crime.

For these reasons, we conclude the trial court was correct in denying Davis' motion to suppress evidence seized from the car. The judgment of a trial court, if correct, will be upheld even though the trial court relied upon the wrong ground for its decision. *State v. Bryant*, 272 Kan. 1204, 1209, 38 P.3d 661 (2002); *Edwards v. State*, 29 Kan. App. 2d 75, 77, 25 P.3d 142, *rev. denied* 271 Kan. 1036 (2001).

## SUFFICIENCY OF THE EVIDENCE

Finally, Davis claims there was insufficient evidence to convict her of theft. "When sufficiency of the evidence is attacked, the standard of review is 'whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Zabrinas*, 271 Kan. 422, 441-42, 24 P.3d 77 (2001).

In this case, the jury was instructed on the theory of aiding and abetting. K.S.A. 21-3205 provides: "(1) A person is criminally responsible for a crime committed by another if such person intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime." The jury was also instructed that "[m]ere association with the principal . . . or mere presence in the vicinity of the crime is insufficient to establish guilt as an aider and abettor." To be guilty of aiding and abetting in the commission of a crime, a party must wilfully and knowingly associate himself or herself with the unlawful venture and wilfully participate in it as he or she would in something he or she wishes to bring about or to make succeed. *State v. Parker*, 22 Kan. App. 2d 206, 208, 913 P.2d 1236, *rev. denied* 260 Kan. 1000 (1996).

Here, Schindler and Bridger provided eyewitness testimony of the events at the mall. Davis was seen conversing with Handson prior to his entrance into the store. Davis was described as keeping a "lookout" while Handson was inside the store. Handson was only in the store for a minute when he returned with two boxes of cookware. Davis walked away quickly with Handson after he left the store with the cookware. Davis was seen placing a bag over the stolen merchandise. She appeared to be nervous and fidgety. Davis

was seen walking to the car along with Handson and the stolen merchandise. When asked to produce a receipt for the cookware, Davis became even more nervous. Combining this evidence with the merchandise recovered from the car, there was sufficient evidence presented to the jury to support its verdict based on a theory of aiding and abetting the theft.

Affirmed.