(221 P.3d 606)

No. 101,912

STATE OF KANSAS, *Appellant*, v. DINAH SANCHEZ-LOREDO, *Appellee.*

Opinion filed November 25, 2009.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Steve Six*, attorney general, for appellant.

*Charles A. O'Hara*, of O'Hara & O'Hara, of Wichita, for appellee.

Before MALONE, P.J., PIERRON and LEBEN, JJ.

LEBEN, J.: The State has appealed the district court's suppression of drug evidence found after officers stopped Dinah Sanchez-Loredo in her car. The officers had been investigating her potential involvement in a methamphetamine-distribution network, and the district court concluded that the officers had probable cause to believe that evidence of illegal drugs could be found in the car. But after the officers first had enough information for probable cause, they continued to follow Sanchez-Loredo for quite awhile even though they also had an assistant district attorney standing by to assist with any search warrant that might be needed. So the district court concluded that the situation didn't sufficiently require immediate action so as to justify stopping Sanchez-Loredo's moving vehicle rather than waiting to obtain a search warrant. We disagree: a moving vehicle presents the justification to stop and search it without a warrant when officers have probable cause to believe that evidence of a crime may be found in the vehicle. We therefore reverse the district court's decision suppressing the evidence found in Sanchez-Loredo's car.

*Standard of Review*

When the defendant files a motion to suppress the evidence

arising from a police stop of a vehicle, the State has the burden of proof to show that the stop was lawful. *State v. Ibarra*, 282 Kan. 530, 533, 147 P.3d 842 (2006). On appeal, we must accept the district court's factual findings when substantial evidence supports them. We then review the ultimate legal conclusion drawn from those facts de novo, which means that we are not required to give deference to the legal conclusions of the district court. *State v. Hill*, 281 Kan. 136, 140, 130 P.3d 1 (2006).

### Factual Background

Hutchinson police officers investigated Sanchez-Loredo's potential involvement in methamphetamine distribution for about 2 months before the car stop at issue. Officers had initially executed a search warrant at a Hutchinson residence; not only was methamphetamine found there, but the investigation also revealed that people at that residence would pay Sanchez-Loredo to buy large amounts of methamphetamine for others in the group to distribute. An officer had seen Sanchez-Loredo's car at the residence the day before the search warrant was executed.

About a month after that residential search, a reliable confidential informant told police that Sanchez-Loredo collected money in Hutchinson and then drove to Dodge City to buy methamphetamine. The informant named a specific individual, Scott McCoy, who the informant said was now buying methamphetamine from Sanchez-Loredo.

About 2 weeks before the car stop, the officers conducting surveillance of Sanchez-Loredo saw her interact at her residence with several people suspected of being involved in the distribution of illegal drugs. The officers saw Sanchez-Loredo, her boyfriend, and Robin Garcia, who had a prior methamphetamine case, meet in the alley behind Sanchez-Loredo's residence. Each person arrived in a separate vehicle, and the three moved items between the vehicles. Sanchez-Loredo then went to Scott McCoy's residence, where she stayed for only 4 minutes. The officers also saw Sanchez-Loredo's boyfriend and Garcia leave and make short visits with others who were suspected of involvement in distributing illegal drugs.

Officers again had Sanchez-Loredo under surveillance on the day of the car stop. She left her apartment in a car with an unknown woman. The two stopped and met with Garcia for about 5 minutes in a park, and then they drove towards Dodge City. The Hutchinson police officers followed.

The women arrived at about 4 p.m. After a couple of brief stops, they went to Extreme Auto Detailing, parked behind the building, and Sanchez-Loredo got out of the car and went into the building. She returned about 10 minutes later, drove away, and then met with someone in a pick-up truck. She then left and drove in a manner one of the officers thought indicated she was trying to see whether she was being followed; the officers stopped tailing her, but they set up a perimeter at the exits from Dodge City. When they didn't see her for more than 1 hour, an officer returned to the auto detail shop, where Sanchez-Loredo was then in the passenger seat while the other woman drove. The two women headed back towards Hutchinson, and the officers again followed them.

During the return, one of the officers talked with an assistant district attorney on the phone and provided information that could be used to obtain a warrant to search Sanchez-Loredo's car. Shortly after the car entered Reno County, at about 8 p.m., the officers stopped it. Officers called a drug-sniffing dog to the scene, but the dog didn't signal the presence of drugs in the car. After the dog failed to alert, one of the officers left to review the affidavit that had been prepared to obtain a warrant; the officer then took the affidavit to a judge's residence, and the judge issued a warrant. After the warrant was issued, at 9:14 p.m., officers searched Sanchez-Loredo's car. They found a tube sock containing about 1 pound of methamphetamine in the glove compartment as well as a glass pipe, a bag of methamphetamine, a cell phone, and $401 in Sanchez-Loredo's purse.

### The District Court's Ruling

The district court concluded that the officers had probable cause to stop and search the vehicle when it left Dodge City. But the district court noted that warrantless searches are the exception, not the rule, and that the exception to the warrant requirement usually

applied in car stops is probable cause *plus* exigent circumstances. The district court held that there were no exigent circumstances: "If exigent circumstances had existed, the vehicle would have been stopped as it was leaving Dodge City in Ford County and not allowed to travel several counties until it arrived in Reno County." The district court also held that a warrantless search could not be made when it was practical to obtain a warrant. The court held that a warrant could have been obtained: "A member of the District Attorney's Office was in the Courthouse ready and able to prepare a search warrant and affidavit. By the time the vehicle left Dodge City, law enforcement had the information in their possession necessary to establish probable cause." The court concluded: "It may well be [that] an appellate court determines a moving vehicle in and of itself creates exigent circumstances. This Court believes the applicable case law still requires a search warrant where it is practicable to obtain a warrant."

*The District Court Erred Because Exigent Circumstances Automatically Exist with a Vehicle's Mobility.*

We start with the district court's speculation that an appellate court may one day determine that a moving vehicle in and of itself creates exigent circumstances. Actually, we had already done so, although neither party cited the case to the district court:

"Under the automobile exception, an automobile search may be upheld as long as there is probable cause to believe there is evidence of a crime in the automobile. *Chambers v. Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970). The automobile exception was originally based on the mobility of a vehicle. Under this exception, exigent circumstances are not required to search a vehicle. Essentially, the vehicle itself provides the exigent circumstances. The automobile exception may also be justified because the expectation of privacy with respect to one's automobile is significantly less than the privacy expectation relating to one's home. *California v. Carney*, 471 U.S. 386, 391, 85 L. Ed. 2d 406, 105 S. Ct. 2066 (1985).

"The automobile exception is recognized and adopted in Kansas. In *State v. Hays*, 221 Kan. 126, 130, 557 P.2d 1275 (1976), the Kansas Supreme Court noted that 'automobiles can be searched without a warrant under circumstances which would not justify the search without a warrant of a house or office, provided there is probable cause to believe that the automobile contains articles which the officers are entitled to seize.' Specifically, the Kansas Supreme Court has held that '[a]utomobile searches may be upheld if there is probable cause to believe there

is evidence of crime in the automobile.' *State ex rel. Love v. One 1967 Chevrolet,* 247 Kan. 469, 477, 799 P.2d 1043 (1990); *State v. MacDonald,* 253 Kan. 320, 325, 856 P.2d 116 (1993); see *State v. Garcia & Bell,* 210 Kan. 806, 810, 504 P.2d 172 (1972).

"Thus, all that is required to search a vehicle under the automobile exception is probable cause to believe there is evidence of a crime in the vehicle. 'Probable cause to search a vehicle is established if, under the "totality of the circumstances" there is a "fair probability" that the car contains contraband or evidence.' *United States v. Nielsen,* 9 F.3d 1487, 1489-90 (10th Cir. 1993)." *State v. Davis,* 31 Kan. App. 2d 1078, 1083-84, 78 P.3d 474 (2003), *rev. denied* 277 Kan. 925 (2004).

One of the long-accepted exceptions to the search-warrant requirement is the combination of probable cause plus exigent circumstances. *State v. Fitzgerald,* 286 Kan. 1124, 1127, 192 P.3d 171 (2008). As we noted in *Davis,* the mobility of the vehicle provides the exigent circumstances, so only probable cause needs to be shown to stop and search a moving vehicle. See also *Maryland v. Dyson,* 527 U.S. 465, 466, 144 L. Ed. 2d 442, 119 S. Ct. 2013 (1999) ("[U]nder our established precedent, the 'automobile exception' has no separate exigency requirement."); *Pennsylvania v. Labron,* 518 U.S. 938, 940, 135 L. Ed. 2d 1031, 116 S. Ct. 2485 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more."); *State v. Delgado,* 36 Kan. App. 2d 653, 657-58, 143 P.3d 681 (2006), *rev. denied* 283 Kan. 932 (2007) ("[T]he mobility of the vehicle itself provides the exigent circumstances."). We acknowledge that language may be found in some Kansas opinions referencing the impracticability of obtaining a warrant, even with respect to car searches. For example, in *Fitzgerald,* our Supreme Court noted that vehicles "may be searched without warrants where it is not practicable to secure a warrant," but the court immediately continued by noting that the vehicle's "mobility fulfills the additional requirement of the existence of exigent circumstances." 286 Kan. 1124, Syl. ¶ 1. We have not located a Kansas case holding that a readily movable vehicle could not be searched when officers had probable cause to believe that evidence of a crime could be found in the vehicle.

The district court's ruling was entirely based on its conclusion that exigent circumstances didn't exist. Thus, the rule we've already

cited already eliminates the legal basis for the district court's ruling. We will proceed, though, to address the district court's specific rationales.

First, the court concluded that no exigent circumstances existed because the officers didn't stop the car when it left Dodge City. Apparently, the district court would hold that if officers are going to claim exigent circumstances, they must proceed to stop and search a vehicle immediately upon having sufficient facts to give them probable cause to believe that evidence of a crime may be found in the car. But that would be an unwise and impractical rule. Police would have to make continuous judgments about whether the information in their possession was enough to give probable cause, and the rule would encourage police to act upon the *minimum* possible information to constitute probable cause. That would increase the risk of officer errors and potentially result in more illegal searches.

Second, the court concluded that no exigent circumstances existed because the officers had made arrangements to have an assistant district attorney standing by to obtain a warrant. In that circumstance, the court held that the officers must proceed to get a warrant rather than rely upon probable cause plus exigent circumstances to stop and search a moving car. This too would be an unwise and impractical rule. When a car is moving, can an officer be sure that all of the steps needed to obtain a warrant will be completed before the car is lost? Someone must prepare an affidavit that shows probable cause and draft a search warrant. Those items must then be presented to a judge, who may not be immediately available. And the judge may find the initial paperwork deficient for some technical reason even if the officers do have probable cause. In another recent case this same panel reviewed from Reno County, a car was stopped shortly after 5 a.m., but officers were not able to obtain a search warrant until about 10 a.m. See *State v. Rogers*, 2009 WL 3737278, at *1, *3 (Kan. App. 2009) (unpublished opinion). In Sanchez-Loredo's case, she left Dodge City at about 4 p.m. We do not know whether a judge was available at that time or whether all of the judges were on the bench hearing cases. An officer is not required to seek a warrant before stopping

a moving vehicle once the officer has sufficient information to justify a legal stop and search of the vehicle.

Once the officers stopped Sanchez-Loredo's car, they could have proceeded at that point to search it because the officers had probable cause. The district court found that they had probable cause, and we have concluded as a matter of law that exigent circumstances existed. The district court also concluded that the failure of the drug dog to alert to possible contraband did not eliminate the probable cause that the facts of this case already supported, and we agree. See *State v. Gonzales*, 2004 WL 2085586, at *4 (Kan. App. 2004) (unpublished opinion), *rev. denied* 278 Kan. 849 (2005) (failure of a drug dog to alert is only one factor to be considered in a probable-cause determination). Instead of proceeding to search without a warrant, however, the officers instead decided to obtain one, and they proceeded to do so in an expeditious manner. Detaining Sanchez-Loredo and her car for the additional time needed in this case to obtain a warrant was reasonable and did not otherwise violate her constitutional rights. See *United States v. Cantu*, 405 F.3d 1173, 1178-79 (10th Cir. 2005).

Without a doubt, the district court was correct here that the officers had probable cause: officers have probable cause to search a vehicle when there is a fair probability that the vehicle contains contraband or evidence. *Davis*, 31 Kan. App. 2d at 1083. The officers' knowledge obtained during 2 months of investigation of Sanchez-Loredo, combined with their observations of her on the day that her car was searched, surely met that standard. Also doubtlessly, the officers had sufficient grounds to stop her vehicle, which requires only reasonable suspicion that the driver is committing, has committed, or is about to commit a crime. See K.S.A. 22-2402(1); *State v. Steen*, 28 Kan. App. 2d 214, 217, 13 P.3d 922 (2000).

In sum, a search without a warrant is allowed when probable cause is combined with exigent circumstances; in the case of potential evidence in a car, the mobility of the car provides the exigent circumstances.

The judgment of the district court is therefore reversed, and the case is remanded for further proceedings.