IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 127,179

STATE OF KANSAS,
*Appellee,*

v.

JESUS MANZANO-LEGARDA,
*Appellant.*

SYLLABUS BY THE COURT

1.

When a district court conducts an appropriate inquiry into a potential juror conflict and elects to retain the juror, a party forfeits a challenge to that decision by failing to move for dismissal or otherwise object.

2.

Defendants lack standing to challenge the search of a vehicle in which they have no possessory interest and no reasonable expectation of privacy.

3.

An error admitting evidence obtained in violation of the Fourth Amendment is constitutional error. Such error is harmless only if the benefiting party proves beyond a reasonable doubt that the error did not affect the outcome given the entire record.

Appeal from Sedgwick District Court; BRUCE BROWN, judge. Oral argument held December 17, 2025. Opinion filed March 20, 2026. Affirmed.

1

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant, and Jesus Manzano-Legarda, appellant, was on a supplemental brief pro se.

*Lance J. Gillett*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

WALL, J.:  This case comes to us after a shooting at a busy Wichita intersection. Someone in an SUV shot and killed another driver. The SUV belonged to a woman who had lent it to her son, Jesus Manzano-Legarda. A jury convicted him of felony murder. He now appeals directly to our court.

Manzano-Legarda doesn't argue that there was insufficient evidence to convict him. He argues instead that his conviction rested on evidence seized in violation of his Fourth Amendment right against unreasonable searches. This evidence includes the discovery of gunshot residue inside his mom's car and spent shell casings in his bedroom.

Manzano-Legarda also challenges the jury's composition. The district court retained several jurors even after potential conflicts arose during trial. That decision, in Manzano-Legarda's view, was unreasonable.

We disagree and affirm. Manzano-Legarda lacks standing to challenge the search of his mother's SUV. He wasn't the owner and wasn't in the vehicle when police stopped it. And even if the search of his room was unreasonable—which is far from clear— introducing that evidence was harmless beyond a reasonable doubt given the other evidence supporting the conviction. The district court also acted within its discretion by retaining the challenged jurors. A reasonable person could agree with those decisions, so we will not second-guess them.

2

Manzano-Legarda borrowed his mother's white SUV on the day of the shooting to scrap a catalytic converter. Security footage at the scrapyard showed him leaving shortly before the shooting. He was alone in the car.

Minutes later, the SUV appeared near the shooting on store security cameras and a Flock camera, an automated camera that captures license plates. The SUV cut through a Family Dollar parking lot and turned toward a nearby intersection just before the shooting.

Witnesses at that intersection saw a white SUV pull into the oncoming lane. It stopped next to the front driver's door of Jacquez Carter's Monte Carlo. Several shots rang out from the SUV's passenger window, and it sped off. A witness described the driver as a Hispanic male with black hair and a beard. Carter tried to drive off but quickly crashed and died at the scene. Police recovered one bullet fragment in the street and five in Carter's car. All were .45 caliber.

Police located and stopped the SUV the next day. The driver was Manzano-Legarda's mother. An officer immediately noticed what he considered a "bullet strike" on the passenger door near the bottom of the window. That damage wasn't visible in the scrapyard footage taken shortly before the shooting.

Manzano-Legarda's mother followed the officers to the police station. She explained that she had let her son borrow the SUV the day before. She gave the officers verbal and written consent to search the vehicle. Officers photographed the bullet strike and took samples from inside the front passenger area. The samples tested positive for gunshot residue.

Later that day, officers visited Manzano-Legarda's parents' house. His mother agreed to let the officers look for him inside. In the basement, where Manzano-Legarda lived, an officer observed an open backpack with ammunition and shell casings. The officers left, used that information to obtain a search warrant, and returned. The items they seized included an ammunition tray of spent .45 caliber rounds with nine rounds missing. Testing showed Manzano-Legarda's fingerprint on the tray.

That night, officers arrested Manzano-Legarda at an apartment complex. The State charged him with first-degree felony murder based on an underlying criminal discharge of a firearm at an occupied vehicle. See K.S.A. 21-5402(a)(2) (defining first-degree murder as a killing committed "in the commission of, attempt to commit, or flight from any inherently dangerous felony"). The jury convicted him on both counts.

The court sentenced Manzano-Legarda to life imprisonment with no parole opportunity for 25 years plus a consecutive 13-month sentence for the criminal discharge.

Manzano-Legarda appealed directly to our court. He has a statutory right to appeal the district court judgment. See K.S.A. 22-3602(a). The appeal comes directly to us because the district court imposed a life sentence and Manzano-Legarda was convicted of an off-grid crime, meaning his sentence was not imposed under the grids that set presumptive sentences for most felonies. See K.S.A. 22-3601(b)(3)-(4); K.S.A. 21-5402(b) (first-degree murder is an off-grid crime).

Manzano-Legarda was appointed an appellate attorney who filed a brief on his behalf. We also granted Manzano-Legarda's motion to file a supplemental brief that he prepared pro se, meaning that he drafted it without the help of an attorney. We then heard oral argument on December 17, 2025.

4

ANALYSIS

Manzano-Legarda raises three challenges on appeal. First, he argues that the district court abused its discretion by rejecting the motion for a new trial he filed after the verdict. In his view, the court had unreasonably retained several jurors when potential conflicts arose during trial, so the interests of justice demanded a new trial. Second, he argues in his pro se brief that the district court should have suppressed evidence from the search of his mother's SUV. And third, he argues that the trial court should have suppressed the ammunition and gun accessories seized from his room because there was insufficient evidence to establish the validity and scope of his mother's consent to the search. As we explained at the outset, we find each challenge unpersuasive.

I.    *A reasonable person could agree with the district court's decision to deny Manzano-Legarda's motion for a new trial.*

The district court addressed four potential juror conflicts during the trial.

After voir dire, but before the jury was admonished and sworn in, one juror asked his cousin to use his connection to the district attorney to get the juror removed. The juror's wife had just miscarried and had spent the past few days in the emergency room. He was also in a probationary period as a firefighter, which made covering his shifts difficult. Defense counsel moved to replace this juror with an alternate, but the district court denied the motion.

Another juror had grown up playing football with one of the testifying officers. He had not recognized the officer's name when presented with a witness list during voir dire because the list identified the officer only as Officer Fisher. Defense counsel moved to replace this juror with an alternate too, but the court denied the motion.

A third juror had lunch at the courthouse with a records clerk from the district attorney's office. The clerk was a friend the juror saw perhaps twice a year. She did not know that the person worked for the district attorney. Defense counsel did not fault the juror or ask the court to replace her. But he argued the district attorney's staff should have known better and moved for a mistrial. The court denied the motion.

A fourth juror realized she lived in the apartment complex where Manzano-Legarda was arrested. She did not remember the arrest and didn't know whether she lived in the same building where it happened. Defense counsel did not object to this juror.

In each instance, the district court held an inquiry outside the jury's presence. Each juror told the court that the situation would not affect their ability to evaluate the case fairly and impartially.

After the jury returned a guilty verdict, Manzano-Legarda moved for a new trial on several grounds. Relevant here, he argued that the nature and amount of juror conflicts undermined confidence in the jury's verdict. But the district court continued to find the jurors' assurances credible and denied Manzano-Legarda's motion. Manzano-Legarda now challenges that decision.

A district court may grant a new trial if the "interest of justice" requires it. See K.S.A. 22-3501(1). We review a district court's ruling on a new-trial motion for abuse of discretion. *State v. Alston*, 318 Kan. 979, 989, 551 P.3d 116 (2024). A court abuses its discretion if its decision is objectively unreasonable or based on a legal or factual error. 318 Kan. at 989. Manzano-Legarda is the party alleging an abuse of discretion, so he bears the burden of showing error. 318 Kan. at 989.

6

Manzano-Legarda doesn't allege any legal or factual error on appeal. Indeed, he conceded at oral argument that the court conducted appropriate inquiries and there was substantial evidence supporting its decisions to retain the jurors. Instead, he asks us to find the district court's decisions objectively unreasonable, meaning that no reasonable person would have taken the position the district court adopted. See *State v. Mitchell*, 320 Kan. 775, 778-79, 571 P.3d 604 (2025). We decline to do so.

Manzano-Legarda did not object to two jurors below. He never asked the court to remove the juror who lived at the apartment complex where he was arrested. Nor did he ask the court to remove the juror who ate lunch with a district attorney staffer. He moved for a mistrial after the lunch incident, arguing that the staffer should have known better. But he has not challenged the denial of that motion on appeal. His failure to object bars any challenge to these two jurors. See *State v. Burton*, 235 Kan. 472, 483-84, 681 P.2d 646 (1984) (party could not challenge district court's decision not to discharge potential juror when party raised no objection during voir dire). We thus turn to the remaining two jurors: the probationary firefighter and the person who grew up playing football with a testifying officer.

Manzano-Legarda selectively highlights certain facts about the firefighter—his recent family tragedy, employment difficulties, and need to work night shifts during trial. He argues that the juror's willingness to continue despite these burdens demonstrates affiliation with the State and an overactive sense of obligation rather than impartiality. We agree that the firefighter had a lot on his plate. But he also assured the court he could concentrate. He had worked night shifts in the Navy. He could probably get reassigned if an emergency call came near a trial location. His wife's friend was tending to her. His wife was starting to feel better and would return to work the next day. And he would tell the court if serving became too much. The district court found these assurances credible. A reasonable person could agree with the court's decision to keep him on the jury.

The juror who grew up playing football with a testifying officer presents an even weaker case. Manzano-Legarda suggests that their relationship was so close that bias could be implied. He likens it to situations in which a juror is an employee of the prosecuting agency, a close relative of a trial participant, or a witness to the charged crime. But Manzano-Legarda exaggerates the relationship. The juror told the court they were not close outside football. And the juror hadn't seen the officer in 20 years. The court found his assurance of impartiality credible. A reasonable person could agree with the court's decision to retain this juror too.

Finally, Manzano-Legarda challenges the district court's remarks during voir dire. The judge compared jury service to military sacrifice and described the American judicial system as the "most fair, free and just judicial system of any." Manzano-Legarda argues that these comments discouraged jurors from honestly acknowledging their biases or limitations. In his view, the remarks created an environment where jurors felt pressure to insist that they could remain impartial even when the facts suggested otherwise.

But Manzano-Legarda never objected to these remarks during voir dire. Nor did he raise them in his new-trial motion. Granted, our court has reviewed judicial-comment error without a contemporaneous objection. But Manzano-Legarda concedes that these remarks do not constitute judicial-comment error. This challenge is not preserved. Because Manzano-Legarda has briefed no exception to our preservation requirement, we decline to reach the merits. See *Schutt v. Foster*, 320 Kan. 852, Syl. ¶ 1, 572 P.3d 770 (2025) (Rule 6.02[a][5] [2025 Kan. S. Ct. R. at 36] requires appellants raising an issue for the first time to brief a preservation-rule exception in their opening brief.).

II. *Manzano-Legarda lacks standing to challenge the search of his mother's car.*

In his pro se brief, Manzano-Legarda argues that the district court erred by denying his motion to suppress evidence from the search of his mother's car. He was not

8

in the car when police stopped it. His mother followed officers to the station and gave them verbal and written consent to search. The search yielded evidence that three samples from the front-passenger area tested positive for gunshot residue.

He lacks standing to raise this challenge. Defendants cannot contest a search unless they have sufficient interest in the area searched. *State v. Scheuerman*, 314 Kan. 583, 593, 502 P.3d 502 (2022). For a vehicle, that means a possessory interest in the car or a reasonable expectation of privacy in it. *State v. Gilbert*, 292 Kan. 428, 431-32, 254 P.3d 1271 (2011); *State v. Epperson*, 237 Kan. 707, 716, 703 P.2d 761 (1985); *State v. Davis*, 31 Kan. App. 2d 1078, 1082, 78 P.3d 474 (2003).

Manzano-Legarda can show neither. His mother owned the car. She sometimes let him borrow it, but he had to return it because she needed it for work. He had his own car, though it was broken at the time. And he was not present when police stopped the vehicle. He has shown neither a possessory interest nor a reasonable expectation of privacy in his mother's car. The district court lawfully admitted evidence obtained from this search at trial.

III. *Any error in admitting evidence seized from Manzano-Legarda's bedroom was harmless beyond a reasonable doubt.*

Manzano-Legarda finally argues that the district court erred in admitting evidence seized from his bedroom. Officers entered the room based on his parents' consent to search the home for him. They observed ammunition in an open backpack. They left, obtained a search warrant based on that plain-view evidence, and returned. The search yielded ammunition and firearm accessories, including a tray of spent .45 caliber casings missing nine rounds. Manzano-Legarda's fingerprint was on the tray.

Manzano-Legarda contends that the record contains no evidence establishing the validity or scope of his parents' consent. An officer's lawful presence is a prerequisite for the plain-view doctrine. *Horton v. California*, 496 U.S. 128, 137, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990). Without valid consent, he argues, the officers' presence here was unlawful, and all evidence derived from it must be suppressed as fruit of the poisonous tree. See *State v. Jones*, 279 Kan. 71, 76, 106 P.3d 1 (2005) ("[T]he exclusionary rule prohibits the admission of the 'fruits' of illegally seized evidence, *i.e.*, any information, object, or testimony uncovered or obtained, directly or indirectly, as a result of the illegally seized evidence or any leads obtained therefrom.").

We would ordinarily review the district court's denial of Manzano-Legarda's suppression motion under our standard framework: reviewing factual findings for substantial competent evidence without reweighing evidence or reassessing credibility and reviewing legal conclusions de novo. *State v. Boggess*, 308 Kan. 821, 825, 425 P.3d 324 (2018). But we take a different path here.

Rather than deciding whether the search was lawful, we assume that it was not and ask whether the introduction of the seized evidence affected the trial's outcome. We do this for two reasons.

First, the suppression proceedings were convoluted. Manzano-Legarda's motion gave no legal basis for suppression; it just asserted that officers searched his room without consent. The State's response ignored the bedroom search entirely and addressed only the car. At the hearing, defense counsel seemed unaware that third-party consent can be an exception to the search requirement. The State complained it had no legal framework to respond to. The parties presented no preliminary-hearing transcript, no witnesses, no stipulated facts, and defense counsel read the search warrant for the first time during argument. Both sides asked the court to rule on facts not in evidence. The court called it an "unduly difficult" "quagmire" where it was "set up for failure."

10

The district court pushed the car-search ruling to trial and made a preliminary ruling on the house search. But it was ambiguous. Officers had searched the bedroom with consent, observed ammunition in plain view, then left and obtained a search warrant. The validity of the initial consent search was thus the threshold question. The court ruled that it would suppress evidence obtained before the search warrant. But it also stated there was "no problem with anything that was a product of the search coming in." And it later admitted the seized evidence. That reasoning complicates the analysis. The warrant rested entirely on what officers saw during the first search. And if the information gained during that search was suppressed, then the warrant lacked a valid predicate. The record confirms that the parties were confused by the ruling.

Second, the law governing parental consent to search an adult child's room is unsettled. And neither party has recognized that fact. The Fourth Amendment of the United States Constitution protects people against unreasonable searches and seizures. *Boggess*, 308 Kan. at 826. Warrantless searches are generally unreasonable, but consent is a well-established exception. 308 Kan. at 826. Officers may obtain consent from the person whose property is searched. See *United States v. Cos*, 498 F.3d 1115, 1124 (10th Cir. 2007). Or they may obtain it from a third party with actual or apparent authority. 498 F.3d at 1124.

Our court has never decided how those standards apply when a parent consents to the search of a cohabitating adult child's room. Federal authority on the question is split. See, e.g., *Morrison v. Ramos*, No. CV 19-1961-JGB (JPR), 2022 WL 2525737, at *11 (C.D. Cal. 2022) (unpublished opinion). The Tenth Circuit presumes that a parent-child relationship gives a parent actual authority to consent to a search of an adult child's bedroom. See *United States v. Rith*, 164 F.3d 1323, 1330 (10th Cir. 1999). But the D.C. Circuit recognizes no such presumption. It requires further inquiry before officers may rely on parental consent because they have "no way of knowing whether parents usually

11

do not permit their adult sons and daughters to have exclusive use of the rooms they occupy." *United States v. Whitfield*, 939 F.2d 1071, 1075 (D.C. Cir. 1991); see also *United States v. Witzlib*, 796 F.3d 799, 801 (7th Cir. 2015) ("The grandmother owned the house but [the defendant] also resided there and he argues that therefore his consent was required. We don't think so. It would be one thing had the police wanted to search his bedroom. To say that the owner of the house could consent to such a search would be as unreasonable as saying that a hotel's owner or manager could consent to a police search of all the guest rooms.").

The D.C. Circuit's approach may well render the search here unlawful. But neither party addressed this disputed framework below or on appeal. Both cite a Kansas Court of Appeals decision adopting the Tenth Circuit's position and treat it as controlling. See *State v. Udell*, 34 Kan. App. 2d 163, 166-67, 115 P.3d 176 (2005) (citing *Rith*, 164 F.3d 1323). But our court has never adopted that position. And decisions from the Kansas Court of Appeals and Tenth Circuit do not bind us. See *State v. Anderson*, 281 Kan. 896, 909, 136 P.3d 406 (2006). Because the parties have not developed the issue, we decline to resolve it here.

We instead assume that it was error to admit the bedroom evidence and ask whether that error was nevertheless harmless. An error admitting evidence obtained in violation of a defendant's Fourth Amendment right is a constitutional error. See *State v. Thornton*, 312 Kan. 829, 832, 481 P.3d 1212 (2021). That error is harmless only if the State shows beyond a reasonable doubt that it did not affect the outcome, meaning that there is no reasonable possibility the error contributed to the verdict. 312 Kan. at 832. The State makes that showing here.

Some of the seized casings from the bedroom search matched the caliber used in the shooting—though .45 caliber is hardly rare. And Manzano-Legarda's fingerprint was on the ammunition tray. Both pieces of evidence bear on the shooter's identity.

But far stronger evidence supported the conviction. Manzano-Legarda had sole possession of his mother's SUV when the shooting occurred. Cameras captured the SUV's plate and tracked it toward the intersection seconds before shots rang out. Eyewitnesses saw a matching white SUV pull alongside the victim's car and watched shots fire from the passenger window. The passenger area of that SUV tested positive for gunshot residue. The passenger door showed fresh damage—what an officer described as a "bullet strike"—not visible in the scrapyard footage minutes before the shooting. A witness saw the SUV speed away driven by a young Hispanic male with black hair and a beard. This description matched Manzano-Legarda's appearance in the scrapyard footage. And cell-tower data placed his phone near the scrapyard before the shooting, near the intersection when it occurred, and heading north afterward—the direction witnesses saw the SUV flee. That evidence is compelling. Even assuming the search was unlawful, the admission of the evidence yielded from it was harmless beyond a reasonable doubt.

In sum, each of Manzano-Legarda's challenges fails. The district court acted within its discretion in retaining the allegedly conflicted jurors, so it lawfully denied Manzano-Legarda's new-trial motion. Manzano-Legarda lacks standing to contest the search of his mother's car. And even assuming the bedroom search was unlawful, the admission of evidence from it was harmless beyond a reasonable doubt.

Affirmed.

LUCKERT, J., not participating.