(143 P.3d 681)
No. 95,019

STATE OF KANSAS, *Appellee*, v. CARLOS F. DELGADO, *Appellant*.

Opinion filed September 22, 2006.

*Jay Witt*, of Kansas Appellate Defender Office, for appellant.

*Jay H. Sizemore*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before RULON, C.J., MCANANY, J., and KNUDSON, S.J.

KNUDSON, J.: Carlos F. Delgado appeals from his convictions for possession of marijuana, possession of marijuana without tax stamps, and possession of drug paraphernalia following a bench trial on stipulated facts. The issue on appeal is whether the district court erred in denying Delgado's motion to suppress evidence obtained from the search of a vehicle in which he was a passenger.

We affirm.

On October 1, 2004, at approximately 3 a.m., Officer Brandon Huntley was parked in a police car in the median of I-135 near Newton, Kansas. He saw an approaching northbound car, and he thought its right front headlight was burned out. However, as the car got closer, Huntley noted an extremely dim light being emitted. As the car passed Huntley's location, he also believed the car windows were tinted too darkly. Huntley stopped the car after it exited I-135 and was on a Newton street.

The driver of the car was Rosario Solis, and Delgado was sitting in the front passenger seat. As Huntley was talking with Solis, he noticed an "overwhelming" odor of marijuana as well as an odor of alcohol coming from inside the vehicle. A search of the car led to the discovery of drugs and Delgado's arrest for the drug offenses.

Huntley was the only witness at the suppression hearing. After hearing his testimony, the district court concluded Huntley had probable cause to stop the car.

When reviewing a defendant's request to suppress evidence, an appellate court reviews the factual underpinnings using a substantial competent evidence standard. However, the ultimate legal conclusion drawn from those facts is a question of law subject to de novo review. *State v. Jones*, 279 Kan. 71, 73, 106 P.3d 1 (2005). If the facts are undisputed, the question of whether evidence should have been suppressed is a question of law, and this court has unlimited review. *State v. Ramirez*, 278 Kan. 402, 404, 100 P.3d 94 (2004). Notwithstanding Huntley was the only witness, he was cross-examined vigorously, and defense counsel argued his testimony was not credible. Thus, the bifurcated standard of review is appropriate.

We note in the district court's decision and the parties' appellate briefs, the terms "probable cause" and "reasonable suspicion" are not carefully distinguished. It is important to note the correct legal standard *is* whether Huntley had a reasonable suspicion under K.S.A. 22-2402 to make an investigatory stop, not whether he had probable cause to stop the car. See *State v. Field*, 252 Kan. 657, Syl. ¶ 2, 847 P.2d 1280 (1993). In *Field*, the Supreme Court of Kansas also recognized "[p]ublic safety or assisting persons in distress, among other reasons, may constitute sufficient reasons to stop an automobile so long as the officer has specific and articulable facts upon which to base the officer's suspicion that such reasons exist." 252 Kan. 657, Syl. ¶ 4.

Delgado contends there was insufficient evidence that the dim headlight established probable cause that the Solis vehicle was operating in violation of K.S.A. 8-1705 or K.S.A. 8-1725. He contends a violation could not be proven and notes the police officer never attempted to measure the light distribution.

K.S.A. 8-1701 *et seq.* contain a number of different provisions relating to the lighting of motor vehicles. K.S.A. 8-1705 states that "[e]very motor vehicle shall be equipped with at least two (2) head lamps with at least one (1) on each side of the front of the motor vehicle, *which head lamps shall comply with the requirements and limitations set forth in this article*." (Emphasis added.) In addition, K.S.A. 8-1725 provides that

"[w]hen a motor vehicle is being operated on a highway or shoulder adjacent thereto during the times specified in K.S.A. 8-1703, . . . the driver shall use *a distribution of light, or composite beam, directed high enough and of sufficient intensity to reveal persons and vehicles at a safe distance in advance of the vehicle* . . . ." (Emphasis added.)

Huntley testified that when he first observed the Solis vehicle approaching, it appeared to have only one operational headlight. It was not until the vehicle got within 200 feet that Huntley could see the second headlight was lit, albeit very dimly. As he followed the Solis vehicle, Huntley noted that with the fog lights, the left working headlight illuminated about 40 feet in front of the vehicle; on the right side, however, all he could see was the fog light illuminated the immediate roadway and nothing else.

Contrary to Delgado's assertion, it does not appear the district court held that the statute would be violated if both headlights on a vehicle were not operating equally. In fact, the judge conceded that the evidence at the suppression hearing would probably not be enough to prove an actual violation beyond a reasonable doubt. The court did find, however, that the evidence presented showed the lighting was inadequate enough to establish probable cause that the lighting was inadequate to illuminate to a distance where the vehicle could be driven safely—*i.e.*, where persons and vehicles could be seen from a safe distance. Although Huntley never measured or tested the lights, he was immediately distracted from following up on the headlights because of the marijuana odor.

Delgado also relies on *State v. Knight*, 33 Kan. App. 2d 325, 104 P.3d 403 (2004). However, *Knight* involved an officer stopping a vehicle after its driver failed to use her turn signal when exiting a private drive onto a public street. The officer asserted the turn violated a municipal ordinance which prohibited turns from public roadways to private roads without a signal. This court held that there was no probable cause to believe the ordinance was violated because it did not regulate turns from private drives to public streets; the officer's mistake as to what the ordinance prohibit did not justify the stop. 33 Kan. App. 2d at 327.

*Knight* is not helpful in this case as the officer did not act based on a clearly incorrect interpretation of the statute. As noted above, the officer personally observed conditions that raised a serious question as to whether the vehicle was being operated in violation of K.S.A. 8-1725.

For these reasons, there is substantial competent evidence to support the district court's finding that the headlight was so inadequately operating that there was probable cause to believe K.S.A. 8-1725 was violated. As the correct standard of "reasonable suspicion" requires even a lesser quantum of evidence, we conclude the stop of Solis' vehicle was justified, and the district court properly concluded the district court did not err in upholding the stop.

Delgado also contends there was no probable cause to believe the Solis vehicle was operating in violation of statutes limiting window tinting and that this justification did not warrant a vehicle stop.

Because the stop was justified due to the headlight issue, we deem this issue moot, and it does not need to be addressed on appeal.

Delgado next contends that the smell of marijuana, alone, does not permit the warrantless search of an automobile. Delgado contends dicta from *State v. Huff*, 278 Kan. 214, 92 P.3d 604 (2004), controls and that *State v. MacDonald*, 253 Kan. 320, 856 P.2d 116 (1993), is distinguishable.

In its response, the State contends Delgado lacks standing, as a mere passenger of the vehicle, to object to the officer's search. However, the State did not challenge Delgado's standing while before the trial court. Generally, an issue not raised before the trial court will not be considered for the first time on appeal. *State v. Rojas*, 280 Kan. 931, 932, 127 P.3d 247 (2006).

If the issue had been raised in the district court, the court may well have held Delgado lacked standing.

"The general rule in Kansas is that an individual must have his or her own personal expectation of privacy in the area searched in order to have standing to challenge that search. . . . Specifically, a person has no standing to challenge the search of an automobile unless the person is the owner of the automobile or is in possession of the automobile. [Citations omitted.]" *State v. Davis*, 31 Kan. App. 2d 1078, 1082, 78 P.3d 474 (2003), *rev. denied* 277 Kan. 925 (2004).

However, because standing was never raised below, Delgado had no reason to present evidence on this issue. Therefore, it is possible he might have claimed an interest in the vehicle at the suppression hearing had the matter been raised. Likewise, Delgado has not filed a reply brief in this case, so he has not responded to this argument. Accordingly, we decline to address this argument on appeal and will move to the merits of Delgado's argument.

With respect to the validity of the search, Delgado's arguments are not persuasive. Kansas recognizes several exceptions to the Fourth Amendment search warrant requirement, including probable cause accompanied by exigent circumstances. *State v. Mendez*, 275 Kan. 412, 421, 66 P.3d 811 (2003). Kansas also recognizes the automobile exception. Under the automobile exception, an automobile search may be upheld as long as there is probable cause to believe there is evidence of a crime in the automobile. Under this

exception, the mobility of the vehicle itself provides the exigent circumstances. *State v. Davis*, 31 Kan. App. 2d at 1083-84.

The Kansas Supreme Court previously held in *MacDonald* that a police officer "had probable cause to further detain the vehicle when he smelled the marijuana odor. . . . The odor created the needed particularized suspicion of criminal activity." 253 Kan. at 324. The Supreme Court also noted that a majority of courts have found that marijuana odor detected by an experienced officer creates probable cause to support a warrantless search. 253 Kan. at 325. Moreover, the smell of marijuana coming from the car is probable cause of a crime and that evidence of the crime would be found in the automobile. 253 Kan. at 325.

Although the initial detention in *MacDonald* was part of an established check lane stop, this does not make the *MacDonald* case distinguishable. There is no doubt from the opinion that the probable cause finding was based solely on the smell of marijuana and did not turn on the driver's subsequent display of a box containing a green leafy vegetation.

Delgado argues the Kansas Supreme Court's decision in *Huff* casts some doubt on whether the smell of marijuana, alone, is sufficient to establish probable cause. However, a careful review of *Huff* establishes it is not controlling in this case. In *Huff*, police responded to the defendant's apartment on an anonymous complaint of loud music and the smell of marijuana. The responding officers arrived and contacted one of the residents. As the resident opened the door, the officers smell burnt marijuana. Although consent to search the apartment was refused, the officers searched the apartment without obtaining a warrant. The district court granted the defendants' motion to suppress, and the State appealed.

In its analysis, the Supreme Court concluded the officers' warrantless entry in the apartment was unlawful. 278 Kan. at 220. Citing the " 'sanctity of privacy in an individual's home,' " the court noted that a warrantless search of a home could only be permitted if there was probable cause and exigent circumstances. 278 Kan. at 220 (quoting *State v. Blair*, 31 Kan. App. 2d 202, Syl. ¶2, 62 P.3d 661 [2002]). In evaluating the case, the court determined that exigent circumstances did not exist in that case. 278 Kan. at 220.

The Supreme Court did indicate that probable cause was weak, at best. 278 Kan. at 221.

In rejecting the State's alternative claim of inevitable discovery, the court in *Huff* did discuss whether the smell of marijuana, alone, would establish probable cause. The court noted there was nothing in the record to determine whether the odor came from the resident or the apartment. In its analysis, the Supreme Court noted that because it was unsettled law whether the mere smell of marijuana would result in the issuance of a search warrant, the inevitable discovery doctrine could not be established. 278 Kan. at 221-22.

We believe the district court's decision that *McDonald* controls is supported by *State v. Conn*, 278 Kan. 387, 395, 99 P.3d 1108 (2004) (quoting *State ex rel. Love v. One 1967 Chevrolet*, 247 Kan. 469, 477, 799 P.2d 1043 [1990]), another automobile search case, in which the Supreme Court noted: " '[T]he expectation of privacy, with respect to one's automobile, is significantly less than the privacy expectation relating to one's home.' " We note *Conn* was decided in the same term as *Huff* with not the slightest suggestion *Huff* would have application to a search under the automobile exception.

We conclude *McDonald* is precedent this court is duty bound to apply. See *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005). The district court did not err in upholding the search of the car.

In summary, the arresting officer had a reasonable suspicion to stop the car, and the strong odor of marijuana constituted probable cause to conduct a search under the automobile exception. Accordingly, the district court's ruling will not be disturbed on appeal.

Affirmed.