NOT DESIGNATED FOR PUBLICATION

No. 113,340

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

JOHN JACOB BEHNKEN,
*Appellant.*

MEMORANDUM OPINION

Appeal from Cowley District Court; NICHOLAS M. ST. PETER, judge. Opinion filed April 1, 2016.
Affirmed.

*Jennifer Anne Passiglia*, of Law Office of Jennifer Passiglia, of Winfield, for appellant.

*Christopher E. Smith*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., BUSER, J., and HEBERT, S.J.

*Per Curiam*: John Jacob Behnken appeals from his conviction of driving under the influence (DUI) after a bench trial on stipulated facts. He argues that the district court erred by denying his motion to suppress evidence, particularly the results of an Intoxilyzer breath test.

We find no reversible error and affirm the judgment of the district court.

1

*Factual and Procedural Background*

At about 2 a.m. on February 25, 2014, Officer Phillip Lynch of the Winfield Police Department stopped a vehicle traveling without using its headlights. Officer Lynch approached the vehicle and spoke with the driver, subsequently identified as Behnken, who was the only person in the vehicle. When he told Behnken that he pulled him over because his headlights were not on, Behnken turned on the windshield wipers in an apparent attempt to turn on the headlights. Behnken tried to explain his mistake by telling Officer Lynch that he just got his pickup back.

Officer Lynch smelled alcohol on Behnken's breath and asked Behnken for his driver's license and insurance information. When Behnken tried to hand his driver's license to Officer Lynch, he fumbled and dropped it between the seats. After using Officer Lynch's flashlight to retrieve the driver's license, Officer Lynch returned to his vehicle, wrote down Behnken's personal information, checked his license, and returned to Behnken's vehicle. Officer Lynch testified that he suspected Behnken had been drinking because Behnken slurred his speech, fumbled and dropped his driver's license, turned on the windshield wipers instead of the headlights, and because he could smell alcohol on Behnken's breath. Officer Lynch then asked Behnken to perform some standard field sobriety tests.

After Officer Lynch explained and demonstrated the walk-and-turn test, Behnken attempted the test. Officer Lynch noted that Behnken was unable to keep his balance before beginning the test, he missed heel-to-toe on three steps, stepped off the line while walking, and used his arms for balance. All-in-all, Behnken exhibited four clues of impairment. Next, Behnken performed the one-leg-stand test, during which he put his foot back on the ground twice in a 30-second period and used his arms for balance.

After completing the field sobriety tests, Officer Lynch "explained to [Behnken] that [he] was going to take him to the Police Department" to have him tested on an Intoxilyzer 8000. At this point, Officer Lynch did not tell Behnken that he was under arrest. Behnken rode to the police department in the front seat of Officer Lynch's patrol car, without his hands cuffed. Once at the station, Behnken submitted a breath sample, which indicated his blood-alcohol content was .192. After Officer Lynch received the test results, he told Behnken he was under arrest.

On March 11, 2014, the State charged Behnken with one count each of driving with a suspended license, driving without headlamps when required, and driving under the influence of alcohol or drugs. On July 11, 2014, Behnken filed a motion to suppress all evidence obtained from the traffic stop, including the results of the evidentiary breath test. In his motion to dismiss, Behnken argued that Officer Lynch's interaction with him was more akin to a *Terry* stop than an arrest. To that end, he argued he was not "under arrest or otherwise taken into custody," which he contended was a prerequisite to a request for a breath test under K.S.A. 2013 Supp. 8-1001. He also argued that even if the court found that he was under arrest, Officer Lynch lacked probable cause to make such an arrest. The State filed a response in which it asserted Behnken was under arrest at the time he was placed into Officer Lynch's patrol vehicle and that probable cause existed to justify the arrest.

On July 22, 2014, the district court held an evidentiary hearing on the motion to suppress, during which only Officer Lynch testified. After direct and cross-examination, the district court judge examined Officer Lynch. Officer Lynch told the district court judge that when he transported Behnken to the police department, he was not free to leave at that point.

Officer Lynch also told the district court judge that not long before this incident, he had investigated a vehicle accident Behnken had in a Wal-Mart parking lot. Officer

3

Lynch testified that Behnken's speech during that prior investigation was "clear and easy to understand"; but on the night of the traffic stop, Behnken spoke slower than normal and his words "smeared together."

After hearing closing arguments, the district court denied Behnken's motion to suppress. It found that a person in Behnken's situation would not believe that he or she was free to leave. The district court stated that Behnken submitted to Officer Lynch's show of authority and was under arrest when he was directed to the patrol car. It further found that Officer Lynch possessed reasonable suspicion to request Behnken take field sobriety tests and, eventually, probable cause to place him under arrest.

On July 23, 2014, the district court filed a journal entry of its order denying Behnken's motion to suppress. On December 17, 2014, the parties stipulated to the facts presented in the suppression hearing for the purposes of a bench trial on the DUI charge. They also stipulated that (1) on February 25, 2014, Behnken was operating a motor vehicle at 2:10 a.m. without headlamps; (2) the breath sample submitted indicated a blood-alcohol content of .192; and (3) Behnken had entered into a previous DUI diversion in 2012. In exchange, the State agreed to dismiss the remaining counts.

The district court ultimately found Behnken guilty of his second DUI offense and on February 4, 2015, it imposed an underlying 1-year prison sentence and fine of $1,250. However, the district court ordered Behnken to serve 5 days in jail and then be released on probation for 1 year. Behnken thereafter filed a timely notice of appeal.

*The District Court Properly Denied Behnken's Motion to Suppress*

Behnken's argument on appeal is two-fold. He first argues the evidentiary breath test should have been suppressed because he was not under arrest at the time he was

4

taken to the police department and submitted to the test. He further argues that, even if he was under arrest at that time, the officer lacked probable cause to arrest him.

In reviewing a district court's decision on a motion to suppress, we apply a bifurcated standard. We review the district court's factual findings to determine whether they are supported by substantial competent evidence. Then we review the ultimate legal conclusion de novo. See *State v. Reiss*, 299 Kan. 291, 296, 298, 326 P.3d 367 (2014). Substantial evidence is legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012).

### *Behnken Was Under Arrest*

Behnken's first argument is that he was not "under arrest" when he was placed in a patrol car to be transported to the police station for the Intoxilyzer test. He would, rather, characterize his situation as simply a continuation of the investigatory detention and, thus, insufficient to support the administration of an evidentiary breath test. In *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012), our Supreme Court determined that a request for evidentiary testing under K.S.A. 2008 Supp. 8-1001(b)(1)(A) must be predicated upon a valid arrest.

An arrest is the taking of a person into custody to answer for a crime. See K.S.A. 22-2202(4). A seizure generally occurs when, pursuant to a show of police authority, a reasonable person would not feel free to leave or to terminate the encounter and submits to the show of authority. See *State v. Moralez*, 297 Kan. 397, Syl. ¶¶ 3-4, 300 P.3d 1090 (2013). That determination is to be made by reviewing the totality of the circumstances in each case. See *State v. Thompson*, 284 Kan. 763, Syl. ¶¶ 19-20, 166 P.3d 1015 (2007).

"Pursuant to K.S.A. 22-2202(4) and K.S.A. 22-2405(1), a person is considered under arrest by a law enforcement officer when the person is physically restrained or otherwise deprived of his freedom of action in any significant way or when he or she submits to the officer's custody for the purpose of answering for the commission of a crime. See *State v. Hill*, 281 Kan. 136, 143, 130 P.3d 1 (2006). The test for determining whether a person was placed under arrest . . . 'is based on what a reasonable person would believe under the totality of the circumstances surrounding the incident. [Citation omitted.]' *Hill*, 281 Kan. at 145." *City of Norton v. Wonderly*, 38 Kan. App. 2d 797, 804-05, 172 P.3d 1205 (2007), *rev. denied* 286 Kan. 1176 (2008).

In the instant case, it is clear Officer Lynch had initiated the encounter/seizure by a show of police authority. He displayed emergency lights to stop Behnken's vehicle and subsequently directed Behnken to exit his vehicle in order to perform field sobriety tests. The record indicates the tests were not merely suggested or optional. Upon completion of the field sobriety tests, Officer Lynch "explained" to Behnken he was going to take him to the police department for further tests. Again, there is nothing in the record which would suggest Behnken was free to refuse the change of location; all indications suggest compliance was mandatory. These circumstances establish several of the factors indicative of a coercive environment as set forth in *Thompson,* 284 Kan. at 811.

Behnken submitted to Officer Lynch's show of authority by riding in the patrol car—albeit in the front seat and without handcuffs—to the police station where he submitted to the Intoxilyzer test. Although Officer Lynch did not explicitly tell Behnken that he was "under arrest," a reasonable person in Behnken's situation would not have felt free to refuse Officer Lynch's directive or to otherwise terminate the custodial encounter. *Cf. Wonderly*, 38 Kan. App. 2d at 805 (defendant effectively under arrest when transported for further field sobriety tests; however he was in handcuffs). In his brief, Behnken claims he was under the belief that if he passed the breath test he would be returned to his vehicle and allowed to go home, but the record does not support this point. In response to questioning by Behnken's attorney during the suppression hearing, Officer

6

Lynch testified that it was not possible he would have told Behnken he could go home if he passed the evidentiary test.

We find that the totality of the circumstances, based on the substantially uncontroverted findings of fact made by the district court, leads to the conclusion Behnken was under arrest at the time he was transported to the police department and submitted to the evidentiary breath test.

*Probable Cause Existed for Behnken's Arrest*

We turn to Behnken's next argument that, should we agree with the district court he was under arrest when taken to the police department, the arrest was not valid because there was no probable cause at that point upon which to premise an arrest.

We first note that Behnken does not challenge the district court's finding Officer Lynch had a reasonable suspicion to support the initial stop. Behnken stipulated he was driving his vehicle at 2:30 a.m. without headlights in violation of K.S.A. 2013 Supp. 8-1702(a)(1). See *State v. Delgado*, 36 Kan. App. 2d 653, 655-56, 143 P.3d 681 (2006), *rev. denied* 283 Kan. 932 (2007).

While speaking with Behnken about the traffic violation, Officer Lynch noticed Behnken's breath smelled of alcohol and observed that Behnken had turned on his windshield wipers instead of his lights and fumbled and dropped his driver's license and insurance information. Officer Lynch further noted Behnken's speech was slurred and slower than normal, in contrast to a recent interaction between Officer Lynch and Behnken. These observations supported a reasonable and articulable suspicion Behnken was driving under the influence, thereby permitting Officer Lynch to expand the scope of his investigation.

Officer Lynch then directed Behnken to exit his vehicle for field sobriety tests. He observed that Behnken was unable to maintain his balance prior to the walk-and-turn test. During the test, Behnken missed heel-to-toe on three steps, stepped off the designated line, and used his arms for balance, thereby exhibiting at least four clues of impairment. While attempting the one-leg-stand test, Behnken put his foot back to the ground twice and used his arms for balance. It was at this point that Officer Lynch told Behnken that he was taking him to the police station.

Probable cause for arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to assure a person of reasonable caution an offense has been committed or is being committed and the person being arrested is or was involved in a crime. *State v. Hill*, 281 Kan. 136, 146, 130 P.3d 1 (2006); see *Sloop*, 296 Kan. at 21. Each case must be evaluated on the basis of the totality of the circumstances presented. *State v. Ramirez*, 278 Kan. 402, 406, 100 P.3d 94 (2004).

Here, we agree with the district court that Officer Lynch made sufficient observations and conducted sufficient field sobriety testing to support probable cause to arrest Behnken at the scene for driving under the influence. The arrest was valid, and the district court properly denied the motion to suppress.

Affirmed.