NOT DESIGNATED FOR PUBLICATION

No. 128,673

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LUCAS SNYDER,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Crawford District Court; KURTIS I. LOY, judge. Submitted without oral argument. Opinion filed March 13, 2026. Affirmed.

*Geoffrey Clark*, of Mason & Clark, LLC, of Fort Scott, for appellant.

*Marissa Jones*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before WARNER, C.J., MALONE and HILL, JJ.

HILL, J.: In this appeal of a district court's affirmation of the Kansas Department of Revenue's suspension of his driving license, Lucas Snyder asks us to reverse the district court's finding that the arresting officer had sufficient legal reason to stop him. That reason was a defective headlight, according to the Highway Patrol trooper who stopped Snyder's car. After the stop, Snyder was, in due course, arrested for driving under the influence of alcohol, and his blood test exceeded the legal limit for alcohol. We reject Snyder's appeal because he is actually asking us to reweigh the evidence, a task that an appellate court cannot do. Accordingly, we affirm.

*After dark, a trooper notices an approaching car with only one working headlight.*

A Kansas Highway Patrol trooper was parked alongside a two-lane highway near Fort Scott in January 2024. Around 10:47 p.m., the trooper saw an approaching vehicle with what looked like a defective passenger-side headlight. Based on the defective headlight, the trooper pulled the vehicle over, later identifying the driver as Snyder.

In traffic stops, oftentimes, one thing leads to another. After this stop for the headlight, the trooper eventually arrested Snyder based on probable cause that he had been driving under the influence of alcohol. The only issue raised in this appeal of the district court's review of agency action is the legal validity of the stop for a defective headlight.

Snyder timely requested an administrative hearing with the Department of Revenue to contest the suspension of his driving license. The hearing officer affirmed the administrative suspension. Snyder timely petitioned for judicial review of that administrative agency action.

*Judicial review affirmed the agency action.*

At the bench trial, the trooper testified that, although his dash camera video appeared to show two working headlights on Snyder's vehicle, that was likely the result of a reflection and not evidence that Snyder's headlights were both working. The trooper did not recall ever checking the headlight after stopping Snyder. He testified that it would have been easy for him to see both headlights because it was dark outside. The trooper did not intend to issue a citation, only stopping Snyder to make sure he was aware of the issue. When the trooper contacted Snyder after initiating the stop, Snyder said that he knew that his headlight was out. The trooper relied on the Kansas Standard Traffic Ordinances, which requires all parts of the vehicle be in proper working condition. He

2

testified that Snyder's vehicle was not in proper working condition, as the headlight was out.

*Snyder knew the headlight was damaged but believed he could drive safely.*

Snyder testified that, on the night he was stopped, despite the defective headlight, he had no trouble seeing and driving safely. In response to a question of whether there was light coming out of the passenger-side headlight, Snyder testified that he was told light was emanating from that headlight earlier that day. The passenger-side headlight had been damaged earlier that week, Snyder testified, after he hit a fence post with his truck. When he admitted knowing that his headlight was defective, he thought the trooper was referring to the plastic covering surrounding the headlight being damaged. Snyder believed the light bulb itself still emitted light and was thus not defective.

The trial court also reviewed evidence of the trooper's dash camera video and the DC-27 form—the arresting officer's certification that a driver was operating a vehicle under the influence of alcohol.

After the evidence and testimony was presented, the trial court found that Snyder's headlight was not working as was required under Kansas law. The court found the trooper had a specific and articulable reason for stopping Snyder's vehicle and telling him the headlight was out. Because there was reasonable suspicion, the court concluded that the traffic stop was lawful and not unconstitutional. Therefore, the trial court affirmed the suspension of Snyder's driving license.

*The rules that govern this appeal are well established.*

Appeals from the administrative suspension of driving licenses are subject to our review under the Kansas Judicial Review Act, K.S.A. 77-601 et seq. K.S.A. 8-259(a);

*Rosendahl v. Kansas Dept. of Revenue*, 310 Kan. 474, 480, 447 P.3d 347 (2019). The first step in the review is a de novo trial in district court. K.S.A. 8-259(a).

After a district court has approved the agency action, such approval can be appealed to this court. In turn, we must determine whether substantial competent evidence supported the district court's factual findings and whether those findings supported the district court's conclusions of law. "'Substantial competent evidence is that which possesses both relevance and substance and which furnishes a substantial basis in fact from which the issues can reasonably be resolved.'" *State v. Sanders*, 310 Kan. 279, 294, 445 P.3d 1144 (2019). Appellate courts do not reweigh evidence, instead focusing on whether the record supports the district court's findings. 310 Kan. at 294.

*We look at four types of police-public meetings.*

"There are generally four types of encounters between individuals and police: (1) voluntary or consensual encounters, (2) investigatory detentions, (3) public safety or public welfare stops, and (4) arrests." *State v. McDonald*, 318 Kan. 486, 488, 544 P.3d 156 (2024). This stop appears to be a public safety or public welfare stop.

A traffic stop is equivalent to a seizure under the Fourth Amendment to the United States Constitution, requiring officers to have a reasonable suspicion that a crime is occurring, has occurred, or is about to occur. *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014). Once the officer has specific and articulable suspicion to stop the vehicle, that stop must be reasonably tailored to the investigation of the suspected violation. *State v. Jimenez*, 308 Kan. 315, 323, 420 P.3d 464 (2018).

*Traffic stops require only a minimal justification.*

Reasonable suspicion demands that law enforcement possess minimal justification for initiating a traffic stop. Deference must be given "to a trained officer's 'ability to distinguish between innocent and suspicious circumstances,'" not evaluating "'whether particular conduct is "innocent" or "guilty," but whether a sufficient degree of suspicion attaches to particular types of noncriminal acts. *United States v. Sokolow*, 490 U.S. 1, 10, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989).'" *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017). Whether the officer's conduct was reasonable is considered in the context of "common sense and ordinary human experience under the totality of the circumstances." 305 Kan. at 1081.

"'The totality of the circumstances standard precludes a "divide-and-conquer analysis" under which factors that are "readily susceptible to an innocent explanation [are] entitled to 'no weight.'" *United States v. Arvizu*, 534 U.S. 266, 274, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002).'" *Sharp*, 305 Kan. at 1081-82. This approach also deters the ability of "law enforcement officers or the courts to selectively choose the facts that would establish reasonable suspicion to justify police action." 305 Kan. at 1084; see *Arvizu*, 534 U.S. at 274 (reasonable suspicion analysis considering each factor in isolation "does not take into account the 'totality of the circumstances,' as our cases have understood that phrase").

*We cast a light on headlights and the traffic code.*

There are several traffic statutes at play in this case. These statutes address the proper equipment for vehicles driving in Kansas. The first, K.S.A. 8-1701(a), makes it unlawful to drive or move a vehicle on the highway "which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this article." The next, K.S.A. 8-1703(a)(1), requires all

5

vehicles on the highway to display at all times "lighted head and other lamps and illuminating devices as required for different classes of vehicles . . . [f]rom sunset to sunrise."

Finally, the statute relating to head lamps or headlights requires that "[e]very motor vehicle shall be equipped with at least two (2) head lamps with at least one (1) on each side of the front of the motor vehicle, which head lamps shall comply with the requirements and limitations set forth in this article." K.S.A. 8-1705(a).

To enforce this equipment regulation, our Legislature directed:

> "Uniformed members of the highway patrol, at any time upon reasonable cause to believe that a vehicle is unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair, may require the driver of such vehicle to stop and submit such vehicle to an inspection and such test with reference thereto as may be appropriate." K.S.A. 8-1759a(a).

"Violation of this section is a class A misdemeanor." K.S.A. 8-1759a(d).

*Our review of the record leads us to conclude that the district court was correct.*

We begin with the legal concept of reasonable suspicion. Reasonable suspicion exists if, at the time of the stop an officer has specific, articulable facts that criminal activity has occurred, is occurring, or is about to occur. *Jones*, 300 Kan. at 637. Appellate courts evaluate questions of reasonable suspicion from the viewpoint of a trained law enforcement officer. *State v. Pollman*, 286 Kan. 881, 890, 190 P.3d 234 (2008).

Here, the trooper testified that his reason for stopping Snyder's vehicle was the defective headlight. The law requires two functioning headlights, not one. K.S.A. 8-1705(a). This trooper saw only one functioning headlight emanating from Snyder's

6

vehicle. And he testified that it was based on his belief that Snyder was violating traffic ordinances that he initiated a traffic stop.

One case offers us guidance in resolving this question. In *State v. Delgado*, 36 Kan. App. 2d 653, 656, 143 P.3d 681 (2006), a panel of this court upheld a traffic stop based on an officer's observations that Delgado's vehicle had only one operational headlight. The panel noted that the vehicle's defective headlight was not entirely out and did emit some degree of illumination. But the panel held that the stop was based on the officer's personal observations of "conditions that raised a serious question as to whether the vehicle was being operated in violation of K.S.A. 8-1725." *Delgado*, 36 Kan. App. 2d at 656. Thus, the panel found substantial competent evidence supported the finding that Delgado's headlight "was so inadequately operating that there was probable cause to believe K.S.A. 8-1725 was violated. As the correct standard of 'reasonable suspicion' requires even a lesser quantum of evidence" than probable cause, the panel concluded the stop was justified. *Delgado*, 36 Kan. App. 2d at 656.

We see no appreciable difference between the facts in *Delgado* and the facts here. In this case, the trooper stopped Snyder because his passenger-side headlight was defective and not working properly. This observation occurred during winter, at night— around 10:47 p.m.—a time in which vehicles are required to display illuminated headlights under K.S.A. 8-1703(a)(1). As a defective headlight necessarily means the vehicle's equipment was not in proper condition, the trooper had reasonable cause to stop Snyder under K.S.A. 8-1759a(a).

A review of the record reveals that substantial competent evidence supports the trial court's factual finding that Snyder's vehicle had a defective headlight, therefore operating in violation of Kansas traffic statutes. See K.S.A. 8-1701; K.S.A. 8-1703; K.S.A. 8-1705. The district court's factual finding thus supports its legal conclusion that

the trooper had reasonable suspicion to stop Snyder's vehicle because the defective headlight constituted a traffic violation, justifying the traffic stop.

Affirmed.